# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2063 | **DATE** | 8/1/2000 |
| **CASE TITLE** | In Re: IN RE: PETTIBONE CORP et al 86 B 1563-1571 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, the decision of the Bankruptcy Court is affirmed in part and reversed in part. The decision of the Bankruptcy Court limiting quarterly fees payable to the United States Trustee is reversed. The decision of the Bankruptcy Court that Heico is responsible for the payment of quarterly UST fees under 28 U.S.C. S 1930(a)(6) is affirmed. This case is remanded to the Bankruptcy Court to enter an order awarding fees to the UST consistent with this opinion.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | AUG 02 2000 date docketed | | 15 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. — BK CT  BK JUDGE | | | 8/1/2000 date mailed notice | |
| JS | courtroom deputy's initials | | 00 AUG -2 AM 7:52 | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES TRUSTEE,<br><br>    Appellant<br>  v.<br><br>PETTIBONE CORPORATION, et. al,<br>N/K/A HEICO HOLDINGS, INC.<br>    Defendants.<br><br>IN RE:<br><br>PETTIBONE CORPORATION, et. al<br><br>    Debtors, | No. 00 CV 2063<br><br>DOCKETED<br>AUG 0 2 2000<br><br>Bankr. No. 86 B 1563-1571 |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

This case comes to this court on appeal by the United States Trustee ("UST") from an order entered by Judge Schmetterer, an experienced and respected judge of the Bankruptcy Court, denying the UST's motion to have quarterly fees due under 28 U.S.C. § 1930(a)(6) calculated on the basis of the ordinary course business expenses of a Chapter 11 reorganized debtor, Heico Holding Inc. ("Heico"). The Bankruptcy Court granted fees to the UST only in the amount of $4,750, stipulated by the parties to be a Plan-related disbursement for the fourth quarter of 1997. The UST appeals, arguing that the quarterly fees due under § 1930(a)(60 are to be calculated on the basis of all payments made by a reorganized debtor, including ordinary business expenses. Heico has filed a

1

cross-appeal, arguing that, even if the UST fees are to be calculated on the basis of all payments made in the ordinary course of business, Heico is not responsible for the fees because it is not "the party commencing a bankruptcy case" within the meaning of the statute. For the following reasons, this court finds that the Bankruptcy Court erred in limiting the UST fees to payments made pursuant to Heico's reorganization Plan, and therefore reverses the holding of the Bankruptcy Court with regard to the UST's appeal. However, this court finds that the bankruptcy court correctly determined that Heico is the liable for the UST fees, and therefore affirms the holding of the Bankruptcy Court on Heico's cross-appeal.

## FACTS

The facts relevant to this appeal are detailed in the Bankruptcy Court's decision, In re Pettibone Corp., Inc, 244 B.R. 906 (Bankr. N.D. Ill. 2000). This court highlights only the most important facts here. On January 31, 1986, Pettibone Corporation, Inc. ("Pettibone") and nine of its subsidiaries, beset by product liability claims, sought voluntary bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et. seq. On December 9, 1988, the Bankruptcy Court confirmed Pettibone's plan for reorganization ("the Plan").

The confirmed Plan created a trust to handle product liability claims ("PL Trust") and allowed the debtor to emerge from bankruptcy as an ongoing business, the reorganized debtor herein, Heico Holding Inc. ("Heico"). After the Plan was confirmed, Heico continued in all or most of the same business of Pettibone and its subsidiaries. Pursuant to section 6.02 of the Plan, Heico issued and deposited securities and cash to be distributed to the various classes of creditors under the Plan with a disbursing agent. Heico was designated as the disbursing agent, but was required to hold the securities and cash in trust for the benefit of creditors, and was not permitted to commingle the funds

with Heico's general assets. Pursuant to the Plan, any unpaid UST fees required under 28 U.S.C. § 1930(a)(6) at and before confirmation were to be paid by Heico. Heico has been paying the minimum amount of UST fees due under 28 U.S.C. § 1930(a)(6), $250 per calendar year. The Plan did not expressly provide for payment of post-confirmation UST fees. However, at the time of the Plan confirmation, the version of § 1930(a)(6) in effect required payment of UST fees only until the Chapter 11 Plan was confirmed, or until the case was converted or dismissed.

Since confirmation of the Plan, the primary matters concerning the administration of the bankruptcy estate have involved the administration of the PL Trust and the liquidation of claims by the disbursing agent on behalf of creditors. The most recent distribution by the disbursing agent was on October 27, 1997.[1] Since confirmation of the Plan, the PL Trust and the disbursing agent have both made reports on the implementation of the Plan with notice to the UST and other interested parties. It is not known when the PL Trust will conclude the administration of the PL Trust in accordance with the Plan.

On September 23, 1996, after Congress had amended § 1930(a)(6) to provide for post-confirmation UST fees, the UST moved to compel Heico to give an accounting of its post-confirmation non-Plan ordinary business expenses. Heico stipulated that it would owe $102,250 (in addition to those fees it has already paid) if the UST was correct in calculating disbursements on Heico's non-Plan post-confirmation business expenses. That stipulation mooted the need for an accounting and any possible factual or evidentiary issues. Thus, the only issue addressed by the

---

[1] It is on the basis of this October 27, 1999, disbursement that the parties agree, and the Bankruptcy Court determined, that Heico owes the UST $4,750 in fees for the fourth quarter of 1997.

3

Bankruptcy Court on the UST's motion for payment of fees was whether Heico was liable to the UST for the fees based upon its actual ordinary expenditures pursuant to § 1930(a)(6). Heico argued that only disbursements to creditors made under the Plan can form the basis of quarterly UST fees. Heico further argued that even if daily operations constitute disbursements, it is not responsible for additional UST fees after it completed its own Plan payments because it had no involvement with the bankruptcy proceedings after those payments were made, at no time had the ability to close the bankruptcy case, and not will have any opportunity to close the case in the future.

## OPINION BELOW

Bankruptcy Judge Schmetterer entered an Final Order and Memorandum Opinion allowing the UST's motion for the payment of fees, but only to the extent of $4,750 stipulated by the parties to have been based on Plan-related disbursements after January of 1996. In so ruling, the Bankruptcy Court concluded that the term "disbursements" as used in 28 U.S.C. § 1930(a)(6) is ambiguous, and adopted the so-called "middle view" of § 1930(a)(6) adopted by some courts. The "middle view" holds that "disbursements" includes payments made by a reorganized debtor, but only payments made under a confirmed plan of reorganization, and not for non-plan day-to-day business payments. See Pettibone, 244 B.R. at 914 (citing In re Celebrity Duplicating Servs., Inc., 216 B.R. 942, 944-45 (C.D. Cal. 1997), rev'd by In re Celebrity Home Entertainment, 210 F.3d 995 (9th Cir. 2000); In re SeaEscape Cruises, Ltd., 201 B.R. 321, 323 (Bankr. S.D. Fla. 1996)).[2]

---

[2]Judges addressing this issue have also adopted a "broad view" and a "narrow view" of § 1930(a)(6). The broad view, which this court adopts today, counts payments made in accordance with the confirmed plan as well as payments made in the ordinary course of business, even if unrelated to the confirmed plan obligations of the debtor. See, e.g., In re Maruko, Inc., 219 B.R. 567 (S.D. Cal. 1998); In re Postconfirmation Fees, 224 B.R. 793, 797 (E.D. Wash. 1998); In re A.H. Robbins, Inc., 219 B.R. 145 (Bankr. E.D. Va. 1998). The narrow view holds that, because the

In determining that the term "disbursements" is ambiguous as used in 28 U.S.C. § 1930(a)(6) and concluding that Congress intended for it to include only payments made pursuant to a confirmed plan, the Bankruptcy Court looked to legislative history and principals of equity. The Bankruptcy Court concluded that the legislative history "must be read for the intent under that provision to fund work of the UST, including UST work both before and after confirmation, in supervision of the bankruptcy process under Chapter 11 of the Bankruptcy Code." Id. at 917. The Bankruptcy Court reasoned that, because the UST has no responsibility or authority to supervise non-plan business operations of the reorganized debtor, Congress intended to fund only those limited post-confirmation activities which are related to ensuring that the plan is carried out and seeking remedies for the failure to carry out the plan. Id. at 919. The Bankruptcy Court based its conclusion, in part, on the fact that there is no precedent on point from the United States Supreme Court, Seventh Circuit, or any other U.S. Circuit Courts of Appeals. The Bankruptcy Court concluded that, in the absence of binding precedent, its task was to apply the "most sound reasoning leading to a result that carries out the statutory purpose." Id.

The Bankruptcy Court also concluded that Heico is responsible for the UST fees, though it is not the original debtor. The court reasoned that because the debtor entities commencing the case no longer legally exist, the obligation to pay the fees must succeed to the reorganized debtor, Heico. The Bankruptcy Court rejected the argument that responsibility for the fees fell to the PL Trustee, because, under the Plan, the PL Trustee was only to pay certain limited and specified charges, and

---

bankruptcy estate ceases to exist upon confirmation, there can be no disbursements from the estate, such that only the minimum quarterly fees could or should ever be due from a reorganized debtor. See Postconfirmation Fees, 224 B.R. at 797 (citing In re Betwell Oil and Gas Co., 204 B.R. 817 (Bankr. S. D. Fla. 1997)).

that "it seems doubtful that the Plan trustee has authority to pay UST fees." Id. at 923.

## STANDARD OF REVIEW

On an appeal from a bankruptcy court decision, a district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013; see also In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993). In reviewing the decision of a bankruptcy court, this court is constrained to accept the bankruptcy court's findings of fact unless clearly erroneous. Matter of Salzer, 52 F.3d 708, 711 (7th Cir. 1995); Matter of Excalibur Auto. Corp., 859 F.2d 454, 457 n. 3 (7th Cir. 1988). Here, the parties do not dispute the facts; instead, they only disagree over the application of the law to those undisputed facts. Questions of law are subject to de novo review. In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994).

## ANALYSIS

I.  Appeal of the United States Trustee Regarding Application of § 1930

Resolution of the UST's appeal depends solely upon whether statutory post-confirmation quarterly fees payable to the UST under 28 U.S.C. § 1930(a)(6) from and after January 27, 1996 are based on the total of all disbursements made by a reorganized debtor, including ordinary operating expenses, or, as the bankruptcy court held, only upon those payments made pursuant to a confirmed reorganization plan. The UST argues that the fee provision is applicable to all payments made by a reorganized debtor; Heico argues that the fees are only applicable to payments made pursuant to its Chapter 11 Plan. This court agrees with the majority of courts which have considered this issue and concludes that, though there may be sound policy and equitable reasons to conclude otherwise, Congress intended that fees for the UST be calculated on the basis of <u>all</u> payments made by a

6

reorganized debtor until the case is converted, dismissed, or closed.[3]

The fee provisions of § 1930(a)(6) have been in place since 1986, when the position of the United States Trustee was created. Before 1996, the statute provided for the payment of fees for each quarter until a plan was confirmed or the case was dismissed or converted. In 1996, the statute was amended to delete the confirmation of a plan as an event that ended the debtor's obligation to pay fees. See Balanced Budget Down Payment Act, I, Pub. L. No. 104-99, Title II, S 211, 110 Stat. 26, 37-38. As a result, the debtor is now obligated to pay quarterly fees until the case is dismissed or converted.

Section 1930 of the Bankruptcy Code authorizes the UST to collect quarterly fees as follows:

> (a) Notwithstanding section 1915 of this title, the parties commencing a case under Title 11 shall pay to the clerk of the district court or the bankruptcy court . . . the following filing fees:
>
> * * * * * *
>
> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11, title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000 . . .

28 U.S.C. § 1930(a)(6). Simply put, § 1930(a)(6) authorizes the UST to collect a quarterly fee from

---

[3]To date, no United States Court of Appeals has decided whether the term "disbursements" includes a reorganized debtor's ordinary course of business post-confirmation payments. However, the majority of courts which have considered this issue have reached the same conclusion this court reaches today. See, e.g., Walton v. Jamko, 240 B.R. 645 (S.D. Fla. 1999), rev'g In re Jamko, Inc., 207 B.R. 758 (Bankr. S.D. Fla.); Vergos v. Uncle Bud's, Inc., 1998 WL 652542 (M.D. Tenn. Aug. 17, 1998); Postconfirmation Fees, 224 B.R. at 798 (Bankr. E.D. Wash. 1998); A.H. Robbins, 219 B.R. at151 (Bankr. E. D. Wash. 1998); In re Hess' Sons, Inc., 218 B.R. 354, 360-61 (Bankr. D. Md., 1998).

the parties commencing a case under Title 11, with the amount of the quarterly fee to be calculated according to a graduated scale based on the total sum of disbursements. "Disbursements" is not defined in the Code. However, the Ninth Circuit has held that "disbursements" is an "expansive" term that captures "all payments," whether to secured or unsecured creditors. See In re Celebrity Home Entertainment, 210 F.3d 995, 998 (quoting St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525, 1534 (9th Cir. 1994)). This appeal arises because § 1930(a)(6) does not specify whether the term "disbursements" includes all post-confirmation payments made by a reorganized debtor, including those made in the ordinary course of business.

In the absence of a statutory definition of the word "disbursements," it should be construed according to its everyday, ordinary meaning. Smith v. United States, 508 U.S. 223, 228, 113 S. Ct. 2050, 2054 (1993). Disbursement means "money paid out; expenditure." American Heritage Dictionary, 2d ed. at 402 (1982). Interpreting § 1930(a)(6) before the 1996 amendments, the Ninth Circuit found that pre-confirmation disbursements refers to all monies "expended" or "paid out." St. Angelo, 38 F.3d at 1534. Heico has pointed to, and this court can find, no case which gives "disbursements" a more narrow reading in the context of post-confirmation disbursements than in the context of pre-confirmation disbursements. The statute gives no reason to think that Congress intended for "disbursements" to be calculated differently pre-confirmation than they are post-confirmation.

Apparently acknowledging the implausibility of "disbursements" carrying a different meaning post-confirmation than it does pre-confirmation, Heico argues that the true distinction is not in the meaning of the word "disbursements" pre-confirmation and post-confirmation, but in the source of the payments. Pre-confirmation ordinary expenses, Heico argues, are made by the debtor-

in-possession with the oversight of the UST, and, therefore, are "part of" the bankruptcy case. Ordinary business expenses incurred by a reorganized debtor, on the other hand, have nothing to do with the bankruptcy estate, and therefore are not subject to the UST fees. Again, this court finds no indication that Congress intended to limit UST fees to those which are "part of" the bankruptcy case, defined by Heico as those made pursuant to a confirmed plan. The plain language of the statute states that the fees are to be calculated on the basis of disbursements until the case is converted or dismissed. Congress thus decided, in effect, that all disbursements made by a Chapter 11 debtor until the case is dismissed or converted are "part of" the bankruptcy case. Congress did not distinguish between those payments made pursuant to a Chapter 11 reorganization plan and those which are not. In the absence of statutory language, this court will not read such a distinction into the Code.

This court's reading of the statute coincides with the legislative history and purpose of the statute. The legislative history of the January 1996 amendment reveals that Congress intended the term "disbursements" to include post-confirmation disbursements and that the term should be interpreted broadly. "[U]nder section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans." H.R. Conf. Rep. 104-378, 104th Cong., 1st Sess. (1995); 141 Cong. Rec. H13894 (Dec. 4, 1995). Moreover, Congress's declared purpose in passing the 1996 amendments was to increase revenue to the U.S. Trustee. See id.; H.R. Rep. 104-196, 104th Cong., 1st Sess. at 16-17 (1995) (noting the need to increase revenue under the statute). It accomplished this purpose by extending the quarterly fees payable under § 1930(a)(6) into the post-confirmation period, and

9

by increasing the schedule of fees. If the term "disbursements" were limited to payments by a bankruptcy estate, or by "extensions" of the bankruptcy estate (such as the PL Trustee here, as characterized by Heico), this amendment would have only minimal impact. A bankruptcy estate usually ceases to exist after a reorganization plan is confirmed. See 11 U.S.C.A. S 1141(b). Thus, most reorganized debtors would have to pay only the minimum quarterly fee which is due when there are zero disbursements due under the Plan.

The Bankruptcy Court relied upon legislative history, as well, but found that the legislative history supports the position that fees should be calculated only on the basis of payments made under a confirmed plan. Judge Schmetterer reasoned that the January, 1996 amendment was not merely a revenue-enhancing measure, but a user fee designed to reimburse the UST for its cost in administering cases post-petition. Heico argues that, because the UST plays a limited the role in the post-confirmation process, and § 1930 does not grant the UST any role in supervising the non-plan business operations of a reorganized debtor, Congress intended for reorganized debtors to be liable for a correspondingly limited "user fee." This court is not unsympathetic to Heico's position. However, it is axiomatic that many use-type taxes will result in overcharging some users, and in undercharging others. Congress created a single straight-forward system which tailors UST fees to the amount of disbursements without requiring courts to engage in a time-consuming and burdensome process of determining how much money the UST should receive in each case. Congress could have, but did not, tailor the fees to the amount of time or effort actually expended by the UST. This court therefore rejects the Bankruptcy Court, as well as Heico's reading, of the legislative history.

The Bankruptcy Court also relied upon the district court decision in Tiffany v. Celebrity

10

Home Entertainment, 216 B.R. 942, 944-45 (C.D. Cal. 1997) finding that, because a bankruptcy estate ceases to exist upon confirmation of a plan, payments made by a reorganized debtor are outside the scope of § 1930(a)(6) "disbursements." However, the holding of the Tiffany case was been reversed by the Court of Appeals for the Ninth Circuit shortly after the decision of the Bankruptcy Court here. See In re Celebrity Home Entertainment, 210 F.3d 995 (9th Cir. 2000). While the Ninth Circuit did not address whether the term "disbursements" includes all payments made by a reorganized debtor, that court did find that Congress did not limit § 1930(a)(6) to disbursements made by the bankruptcy estate, but also included post-confirmation payments made by a reorganized debtor. Id. at 998. As discussed above, Heico in effect urges this court to limit fees due under § 1930(a)(6) to those made by the bankruptcy estate and post-confirmation "extensions" of the estate. While there was no "binding precedent" of decisions by United States Courts of Appeals at the time the Bankruptcy Court reached its decision in this case, the Ninth Circuit has since rejected a substantial portion of the argument Heico advances in this case -- that "disbursements" include only payments made by an estate or "extensions" of the estate. While this court is not bound by that precedent, this court should follow a holding from another circuit court of appeals unless it is convinced that court's decision is erroneous. O'Malley v. United States, 340 F.2d 930, 933 (7th Cir. 1964), rev'd on other grounds, United States v. O'Malley, 383 U.S. 627, 86 S. Ct. 1123 (1966). As discussed above, this court believes that the plain language and legislative history of § 1930(a)(6) support the Ninth Circuit's holding in Celebrity Home that § 1930(a)(6) requires UST fees to be paid on the basis of all payments made by a reorganized debtor, and therefore does not believe that the decision is erroneous.

In Celebrity Home, the Ninth Circuit did not distinguish between types of post-confirmation

11

disbursements. It also did not explicitly hold that "all" payments made by a reorganized debtor count for purposes of determining UST fees, as the UST argues. The Ninth Circuit did, however, expand its previous broad reading of the term "disbursements," St. Angelo, 38 F.3d at 1534, into the post-confirmation setting. As such, this court considers Celebrity Home to be persuasive authority in support of the argument that § 1930(a)(6) UST fees are to be computed on the basis of all payments made by a reorganized debtor, not just those made pursuant to a Chapter 11 plan.

This result is in keeping with a recent trend among district courts holding that fees are to be computed based on all post-confirmation disbursements of the reorganized debtor. One bankruptcy court, for example, limited quarterly fees to disbursements made under a confirmed plan. See In re Wintersilks, Inc., 243 B.R. 351 (Bankr. W.D. Wis. 1999). That court relied upon a previous order by Judge Schmetterer in this case (since withdrawn), which limited fees to those made under Heico's reorganized plan. The UST has since appealed the bankruptcy court's decision in Wintersilks, and on June 2, 2000, the district court reversed the bankruptcy court in an unpublished order. In re Wintersilks, No. 00 C 0106-C, Opinion and Order of the District Court (W.D. Wis., June 2, 2000). Another case relied upon by Heico is the bankruptcy court's decision in In re Danny's Markets, Inc., 239 B.R. 342 (Bankr. E.D. Mich. 1999), which also limited fees to plan-related disbursements. That case, however, was also recently reversed by the district court in an unpublished order. The district court remanded the case to the bankruptcy court "for a determination of quarterly fees based on all disbursements made by Appellees after May 1, 1998." United States Trustee v. Danny's Markets, Inc., No. 99-1044, Order of the District Court, (E.D. Mich. Feb. 7, 2000).

Finally, the Bankruptcy Court relied upon policy and equitable considerations, concluding that to include business expenses unrelated to bankruptcy, the Plan, or the duties of the trustees in

12

computing UST fees "would be to find a special tax imposed on a debtor's successful reorganization and business operation, a tax unrelated to the bankruptcy case that the debtor has no power to end where as here a continued Plan trust has issues that keep the case open." Pettibone, 244 B.R. at 922. Again, this reading of the statute presupposes that only those disbursements related to the administration of a plan itself are "related to the bankruptcy case." This court finds no support for such a reading of the statute, either in the statute itself or in its legislative history. Pre-confirmation "disbursements" include ordinary business expenses, and are not limited to payments made to creditors. Congress thus apparently concluded that such pre-confirmation payments are "related to" the bankruptcy case, though they do not directly concern the administration of the Plan. Nothing in the statute or legislative history indicates that Congress believe that post-confirmation ordinary business expenses are not likewise "related to" the bankruptcy case, though they also do not directly involve the administration of the plan. A payment need not be made pursuant to a plan in order to be "related to a bankruptcy." The process which allows debtors to emerge from bankruptcy and operate as reorganized businesses is a beneficial and sometimes lengthy process, and Congress could rationally conclude that UST fees based upon all disbursements during the entire process is a fair price to charge for the process as a whole.

In the end, a fair reading of § 1930(a)(6) suggests that Congress has concluded that all payments made by a bankruptcy estate and reorganized debtor until the case is closed or dismissed are "related to" the bankruptcy case, and thus may form the basis of UST fees under the statute. Read in this manner, § 1930(a)(6) may, in fact, impose a "special tax" on reorganized debtors, as

13

Heico argues is the case here.[4] If Congress is unhappy with that result, Congress, not the courts, is the correct body to correct the statute. See In re Kroy, 244 B.R. 816, 819 (D. Ariz. 2000) ("Bankruptcy judges have no more power than any other judge to ignore the plain language of a status [sic] in order to reach a result more in keeping with their notions of equity.")

II.     Appeal of Heico Regarding Responsibility for UST Fees

Finally, Heico cross-appeals the decision of the Bankruptcy Court, arguing that, should this court determine that UST fees are to be determined on the basis of all ordinary course payments, Heico is not liable for the fees because it is not "a party commencing the case within the meaning of section 1930(a)."[5] This court concurs with the Bankruptcy Court's finding that Heico's argument is without merit.

Section 1930(a) provides that "the parties commencing a case under title 11 shall pay to the

---

[4]This court recognizes the apparent unfairness of § 1930(a)(6) as it applies to Heico. As noted by Heico, Pettibone emerged from bankruptcy more than eight years ago, and Heico is "a vastly different legal entity than the original debtor." Moreover, Heico currently has no role or responsibility in the bankruptcy case, does not have the power to close the case, and therefore cannot hasten the termination of its responsibilities to pay quarterly UST fees. However, Heico's argument that "there is no justification for suddenly imposing ... a tax based on the ordinary course expenses of Heico" must be made to Congress, not this court. There can be no doubt that Congress intended for the post-confirmation fees to apply to all Chapter 11 cases with confirmed reorganization plans pending at the time of the 1996 amendment. H.R. Conf. Rep. 104-378, 104th Cong., 1st Sess. (1995); 141 Cong. Rec. H13894 (Dec. 4, 1995). The statute is thus sufficient "justification" to impose the fees on Heico.

[5]Heico no where explains why it is responsible for the statutory minimum fees due when based upon Plan payments only, but not responsible for the greater fees due when based upon all payments made by Heico. Instead, Heico simply states that, if fees were limited to those based on the Plan, "Heico would have simply lived with" an unfavorable result. However, if disbursements include ordinary business expenditures, as this court has found, Heico must pay back fees of over $145,000 and $10,000 per quarter until the case is closed by the PL Trustee, and therefore has incentive, if not a legal basis, to challenge the result.

14

clerk . . . the following fees . . ." The quarterly UST fees are among the fees listed in § 1930, though they are not, unlike the other listed fees, paid to the clerk. Heico argues that it is not the party commencing the case under § 1930 because it is not the same legal entity as Pettibone and its subsidiaries, the parties who commenced the case. However, Heico has continued the same line of business of the original debtor, and Congress has specifically provided that quarterly fees continue beyond confirmation of a plan. A business which continues as part of a Chapter 11 plan is, by definition, reorganized. To interpret the statute in the manner suggested by Heico would result in no Chapter 11 debtor with a confirmed plan ever paying the fee. Such interpretation is clearly contrary to congressional intent and the language of the statute itself does not require such a result. See Postconfirmation Fees, 224 B.R. at 797. Congress made it abundantly clear that it intended that for reorganized debtors be responsible for the fees of a party commencing the case, even once that party becomes a new legal entity.

Heico further argues that, even if it were the party commencing the case within the meaning of § 1930, subsection (a)(6) does not require the party commencing the case to pay quarterly UST fees, but rather uses the passive voice: "a quarterly fee shall be paid to the United States trustee." Thus, Heico argues, the statute is silent as to who must pay the fee. This court disagrees. While subsection (a)(6), read alone, may appear silent on who is to pay the UST fees, when read along with the first line of subsection (a), it is clear that, perhaps in the absence of a plan provision to the contrary, the party commencing the case is responsible for the fees. While the language of the statute does change from active to passive voice in subsection (a)(6), there is no indication that Congress intended to depart from the initial focus on "the parties commencing the case." See Boulders on the River, Inc., 218 B.R. 528, 536 (D. Or. 1997).

Morever, Congress clearly intended that some entity be responsible for the fees, and Heico has suggested no feasible alternative to itself. Heico argues that the PL Trust should be responsible for the fees because it is the administration of the Trust that is causing the case to remain open. However, as reasoned by the Bankruptcy Court, under the Plan "it seems doubtful that the Plan trustee has authority to pay UST fees." The Plan delegates limited duties to the PL Trustee, and states that only a few, specific costs are to be paid out of the PL Trust. Moreover, under the Plan, Heico was responsible for paying pre-confirmation UST fees required under § 1930. The Plan admittedly only provided for pre-confirmation fees, but pre-confirmation fees were the only UST fees required by § 1930 in 1988, when the Plan was confirmed. The provision requiring Heico, not the PL Trustee, to pay pre-confirmation fees lends support to the conclusion that Heico is responsible for post-confirmation fees due under the amended statute. The Plan must be enforced as it is written. See 11 U.S.C. § 1141(a) (confirmed plan binds debtor and any entity acquiring property under the plan). This conclusion is buttressed by the fact that Heico has been paying the minimal UST fees without objection.

## CONCLUSION

For the reasons stated, the decision of the Bankruptcy Court is AFFIRMED in part and REVERSED in part. The decision of the Bankruptcy Court limiting quarterly fees payable to the United States Trustee is REVERSED. The decision of the Bankruptcy Court that Heico is responsible for the payment of quarterly UST fees under 28 U.S.C. §1930(a)(6) is AFFIRMED.

This case is REMANDED to the Bankruptcy Court to enter an order awarding fees to the UST consistent with this opinion.

ENTER:

*[signature]*
JAMES F. HOLDERMAN
United States District Judge

DATE: August 1, 2000